IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

TONYA SMITH,                      )

                               )

           Plaintiff,           )

                               )

v.                             )        Case No.: 1:24-CV-608

                               )

LOUDOUN COUNTY SCHOOL BOARD, et al.,  )

                               )

           Defendants.       )

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

COME NOW Defendants, Loudoun County School Board and Daniel Smith, Ed.D., by counsel, pursuant to Fed. R. Civ. P. 12(b)(6), and file their Memorandum in Support of Defendants' Motion to Dismiss, as follows:

### I.      INTRODUCTION

Plaintiff, Tonya Smith ("Smith"), worked as an Assistant Principal for the Loudoun County School Board ("LCPS") prior to the 2023-2024 school year. She was in a "continuing contract" status, having served a probationary term of three (3) years in that position at LCPS. *See,* Virginia Code § 22.1-294. On May 16, 2023, Smith was notified by Daniel Smith, Ed.D. ("Dr. Smith"), Superintendent of LCPS, that he planned to recommend to the School Board that Smith be reassigned to a teaching position at a lower rate of pay for the 2023-2024 school year. *See,* Exhibit 1. Dr. Smith provided Smith with written notice of the reason for reassignment and an opportunity to present her position at an informal meeting with him or the School Board, as required by Virginia Code § 22.1-294(D). *Id.* On May 22, 2023, Smith advised that she wished to avail herself of the opportunity to meet informally with the School Board to "review … the reassignment that [she] received to move from High School Assistant Principal at Freedom High School to a teaching position for the 2023-2024 school year with a reduction in salary." *See*, Exhibit 2.

On June 27, 2023, Smith met with the School Board and was given an opportunity to present her opposition to the transfer from Assistant Principal to teacher. Thereafter, the School Board – which has the sole discretion whether to reassign and reduce salary[1] – voted to do just that. On August 8, 2023, Smith was offered a position as a teacher, at a reduced rate of pay, which she accepted. She continues in that position at present.

Smith has opposed her reassignment. She initially attempted to grieve the decision, which LCPS deemed to be a non-grievable matter. Smith took issue with LCPS' decision, and filed suit in Loudoun County Circuit Court challenging LCPS' determination of non-grievability. *Smith v. Loudoun County School Board*, Loudoun County Circuit Court, Case No. CL23005532-00 ("the State Court Action"). *See* Exhibit 3. On February 22, 2024, after a full trial, the Loudoun County Circuit Court affirmed LCPS' determination that Smith's complaint was non-grievable. *See* Exhibit 4. This suit followed.

In the present suit, Smith maintains that she was denied due process, under federal and state law, when she was transferred from an Assistant Principal to teacher position. She also maintains that LCPS breached a contract which she contends she entered into with LCPS for assignment as an Assistant Principal for the 2023-2024 school year.[2] She seeks redress for the alleged "wrongful and illegal conduct of the Defendants towards her, …." Compl., p. 2. For the reasons outlined below, Smith fails to state any legally cognizable claim, and this suit should be dismissed with prejudice.

---

[1] *See*, Virginia Code § 22.1-294(D).

[2] The "contract" to which Smith refers is titled "Continuing Contract Salary Notification." *See,* Exhibit 5. The document was purportedly "accepted" by Smith on May 17, 2023, after Smith was notified by Dr. Smith that she was being recommended for reassignment, and not for a position as an Assistant Principal.

## II.    STANDARD OF REVIEW

"In reviewing a motion to dismiss for failure to state a claim, [a court] must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray*, 948 F.3d at 226 (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). "[A] court may[, however,] consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st

Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)). Further, in considering a Rule 12(b)(6) Motion, a district court may, "consider matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); *Brown v. Ocwen Loan Servicing, LLC*, Civ. No. PJM 14-3454, 2015 U.S. Dist. LEXIS 110133, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015) (the court can "take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment.").

### III. STATEMENT OF FACTS

At the outset, Defendants submit that the court, in ruling on this 12(b)(6) motion, is not limited to the bare allegations of the Complaint, but may and should consider court records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint. These include the following:

A.      May 16, 2023 memorandum from Dr. Smith to Smith notifying her of his intent to recommend reassignment from Assistant Principal to teacher, referenced at paragraph 13 of the Complaint. Exhibit 1.

B.      May 22, 2023 request by Smith to meet informally with the School Board to contest reassignment, referenced at paragraph 14 of Complaint, and introduced as LCPS' Exhibit 9 during the State Court Action. Exhibit 2.

C.      Lawsuit in the the State Court Action, referenced at paragraph 27 of the Complaint. Exhibit 3.

D.      Decision in the State Court Action, referenced at paragraph 27 of the Complaint. Exhibit 4.

E.      Continuing Contract Salary Notification, 2023-2024, referenced at paragraph 12 of the Complaint, and introduced as Plaintiff's Exhibit 6 during the State Court Action. Exhibit 5.

Considering the allegations in the Complaint, and the materials referenced above, the following should be considered by the court for purposes of ruling on Defendants' motion to dismiss.

Prior to the 2023-2024 school year, Smith worked as an Assistant Principal in the LCPS system for a period longer than three (3) years. Compl. ¶¶ 7-8. As such, she had attained "continuing contract status" under Virginia law. Compl. ¶ 8.

On May 11, 2023, Smith was presented with a "Continuing Contract Salary Notification, 2023-2024." Compl., ¶ 12; Exhibit 5. The **notification** came from the Department of Human Resources and Talent Development. Exhibit 5. It advised Smith that, for the 2023-2024 school year, she would receive:

POSITION:     **Assistant Principal**

***

2023-2024 Total Salary:               **$146,411**

Beginning Date 2023-2024 Contract:    **July 3, 2023**

*Id.*

The notification further provided, "[t]his employment is subject to all laws and all policies, rules and regulations of the School Board, and the Division Superintendent now in existence or hereafter enacted during this employment." *Id..*, p. 1, ¶ 1.

On May 16, 2023, before Smith purportedly accepted the "contract" which had been pushed out to her by the Department of Human Resources and Talent Development on May 11, 2023, Smith was notified by Dr. Smith, Superintendent of LCPS, that he planned to recommend

to the School Board that Smith be reassigned to a teaching position at a lower rate of pay for the 2023-2024 school year. *See,* Exhibit 1. Dr. Smith provided Smith with written notice of the reason for reassignment and an opportunity to present her position at an informal meeting with him or the School Board, as required by Virginia Code § 22.1-294(D). *Id.* On May 22, 2023, Smith advised that she wished to avail herself of the opportunity to meet informally with the School Board to "review … the reassignment that [she] received to move from High School Assistant Principal at Freedom High School to a teaching position for the 2023-2024 school year with a reduction in salary." *See*, Exhibit 2.

Smith was available to meet with the School Board before June 15, 2023. Compl. ¶ 15. Despite meeting twice between the date she requested a meeting and June 15, 2023, the School Board did not meet with Smith until June 27, 2023. Compl. ¶¶ 15-16.

Prior to her June 27, 2023 meeting with the School Board, Smith sought information on how the meeting with the School Board would proceed. Compl. ¶ 17. She was told that she would receive a copy of any written materials that the School Board would be furnished in advance of the meeting. *Id.* She was also advised that:

> LCPS has not made final decisions regarding which staff members will be in attendance, but  Superintendent Smith, Ms. Boland, and Division Counsel Robert Falconi will likely be present in the meting along with the members of the School Board. Other staff members may be present as well.
>
> I do want to emphasize that the purpose of the meeting will be for you to discuss your concerns regarding the proposed reassignment with the Board, and Dr. Smith, Ms. Boland and Mr. Falconi are not expected to contribute to the conversation or ask any questions unless members of the Board specifically ask.

*Id.*

LCPS did not have a written policy to address how the meeting with the School Board would proceed. Compl. ¶ 18. Smith maintains that LCPS "should have implemented a written

policy to provide clear notice on how this process would work." *Id.* Smith maintains that the lack of a written policy "directly harmed Plaintiff and her ability to present her side of the story, if you will, during the meeting." *Id.* In the absence of a written policy, Smith maintains that LCPS had to adhere to the assurances given to Smith, as set forth above, regarding what to expect at the meeting. Compl., ¶ 19.

On June 27, 2023, Smith met with the School Board and was given an opportunity to present her opposition to the transfer from Assistant Principal to teacher. Compl. ¶ 20. During the meeting, a School Board member referenced written materials that the Board had been provided, which Smith maintains she was not provided. *Id*. Additionally, the School Board went into closed session to consider the reassignment and, when it did, Neelum Chaudhry, Principal of Freedom High School ("Chaudhry"), and Nereida Gonzalez-Sales ("Sales"), Director of High Schools, accompanied the School Board. Compl., ¶ 21. Chaudhry was hostile to Smith and had previously recommended that Smith's employment be terminated altogether. *Id.* Smith surmises that Chaudhry and Sales "were taken into the Board's closed session in order to provide adverse information about Plaintiff to the Board,…." Compl., ¶ 22. Smith was not aware that these individuals would be present at the School Board meeting. Compl., ¶ 23. She maintains that she would have changed the comments which she made to the School Board had she known these individuals would be present, and that she suffered significant prejudice by not knowing in advance that Chaudhry and Sales would be present. *Id.*

After the closed session, the School Board voted to reassign Smith to a teacher position. Compl. ¶ 24. There was no open announcement regarding whether there would also be a reduction in pay, as recommended by Dr. Smith. *Id.*

On August 8, 2023, Smith was presented with a written contract offering her a teacher

position for the 2023-2024 school year. Compl., ¶ 25. She contends that, under protest, she signed that contract and has worked as a teacher at Heritage High School "throughout the current school year." Compl., ¶ 26.

Smith attempted to grieve the transfer, and LCPS denied the issue was grievable. Compl., ¶ 27. Smith sued LCPS in state court over LCPS' grievability decision, and the state court affirmed the decision in favor of LCPS. *Id.; see also* Exhibits 3 and 4.

Smith now looks to this court for redress for what she believes to be violations of her due process rights and LCPS' breach of contract. Specifically, the Complaint contains the following counts:

| | |
|---|---|
| Count I: | 42 U.S.C. § 1983 – Violation of the Fourteenth Amendment (Due Process Violations Re: Plaintiff's Continuing Contract Status) Against All Defendants |
| Count II: | 42 U.S.C. § 1983 – Violation of the Fourteenth Amendment (Due Process Violations Re: the School Board Meeting) Against All Defendants |
| Count III: | Violation of Plaintiff's Due Process Rights under the Constitution of the Commonwealth of Virginia (Article I, Section 11) Against All Defendants |
| Count IV: | Breach of Contract (Against Loudoun County School Board) |

For the reasons which follow, none of Smith's claims are viable, and the court should dismiss all claims with prejudice.

## IV.    LAW AND ARGUMENT

Smith's claims are barred by res judicata. She previously addressed the same issues in this suit in the State Court Action and/or had an opportunity to do so. She is, therefore, barred from asking this court to allow her another bite at the apple.

Should the court not find that all claims raised herein are barred by res judicata, Smith has nevertheless failed to state a due process violation, under federal or state law. In order to state such

a claim, she would have to establish that she had a property interest protected by due process guarantees. She has not pled facts to establish such an interest, which necessarily defeats a claim that she has been subjected to a violation of due process. Further, even if the court was to find that she has established such an interest, she was afforded all the due process required by law.

Smith has also not stated any claim against Dr. Smith in his individual capacity. As Superintendent, he had no authority to reassign Smith or obligation to provide her due process. Those matters rested exclusively within the School Board's domain. As such, Dr. Smith had no personal involvement in the alleged violations of due process about which Smith complains.

Finally, Smith has not established that LCPS breached any contract with her. The "Continuing Contract Salary Notification, 2023-2024" which Smith relies upon for her alleged breach of contract claim is not a contract. It is a salary notification – as it states; nothing more, nothing less. That salary notification became moot and of no effect when Smith was advised of her transfer from Assistant Principal to teacher for the 2023-2024 school year, along with a reduction in pay. To the extent that Smith contends any "offer" was extended to her prior to the offer of a transfer, which she accepted, such an offer was withdrawn or the parties failed to have a meeting of the minds at such time as Smith attempted to accept the "offer," thus defeating the formation of a contract.

1.      **Smith's claims are barred by res judicata.**

Federal courts must give full faith and credit to valid state court judgments. 28 U.S.C.A. § 1738 (West 1994); *In re Genesys Data Techs.*, 204 F.3d 124, 127 (4th Cir. 2000). In doing so, a federal court must "'refer to the preclusion law of the State in which judgment was rendered.'" *Id*. (*quoting Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 84 L. Ed. 2d 274, 105 S. Ct. 1327 (1985)).

Rule 1:6 – Res Judicata Claim Preclusion – is the applicable rule in Virginia. It states, in relevant part:

> (a) Definition of Cause of Action. A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, is forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought. A claim for relief pursuant to this rule includes those set forth in a complaint, counterclaim, cross-claim or third-party pleading.

In *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135 (2017), the Virginia Supreme Court provides a helpful overview of the doctrine of res judicata. It notes, in part:

> Res judicata involves both issue and claim preclusion. *See generally Lee v. Spoden*, 290 Va. 235, 245-46, 776 S.E.2d 798, 803-04 (2015). Issue preclusion bars relitigation of common factual issues between the same or related parties. "Under the concept of collateral estoppel, 'the parties to the first action and their privies are precluded from litigating [in a subsequent suit] any issue of fact actually litigated and essential to a valid and final personal judgment in the first action.'" *Rawlings v. Lopez*, 267 Va. 4, 4-5, 591 S.E.2d 691, 692 (2004) (alteration in original) (citation omitted). Claim preclusion, on the other hand,
>
>> bars the assertion of legal or equitable rights of action, even if they were not specifically resolved in earlier litigation. . . . Called "merger" when the claimant wins the first suit and "bar" when the claimant loses it, claim preclusion under the doctrine of res judicata treats unasserted claims as being subsumed in the disposition of the related, previously adjudicated, claims.
>
> Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 14.11[B][5], at 1214 (6th ed. 2014) (emphasis in original).
>
> For all of the legal argot making the doctrine sound tiresomely erudite, the thought is really no more complicated than saying that, as Henry Black put it, litigants must "make the most of their day in court." 2 Black, supra note 5, § 731, at 1096. With equal clarity, it could also be said: "The law should afford one full, fair hearing relating to a particular problem – but not two." Kent Sinclair, Guide to Virginia Law & Equity Reform and Other Landmark Changes § 11.01, at 246 (2006).

\* \* \*

Virginia law has historically recognized that a litigant must unite every joinable claim that he has against a particular defendant in one proceeding or risk the preclusion of his other claims. "Every litigant should have opportunity to present whatever grievance he may have to a court of competent jurisdiction; but having enjoyed that opportunity and having failed to avail himself of it, he must accept the consequences." *Miller v. Smith*, 109 Va. 651, 655, 64 S.E. 956, 957 (1909). Thus, the "effect of a final decree is not only to conclude the parties as to every question actually raised and decided, but as to every claim which properly belonged to the subject of litigation and which the parties, by the exercise of reasonable diligence, might have raised at the time." *Smith v. Holland*, 124 Va. 663, 666, 98 S.E. 676, 677 (1919) (emphasis added)."Several statements of this underlying principle go back to the earliest formulations of Virginia res judicata law." Sinclair, supra, § 11.01, at 246. When a court has decided a party's claim regarding a particular "subject-matter" on the merits, that decision is "not now to be questioned in a subsequent controversy upon the same subject-matter between the same parties." *Washington, Ohio & W. R.R. Co. v. Cazenove*, 83 Va. 744, 752, 3 S.E. 433, 438 (1887).

*Id.* at 142.

The concept of res judicata has been explained in this circuit, as follows:

In Virginia, res judicata precludes claims that could have been brought in a prior suit, even if they were not actually asserted. *Flora, Flora & Montague, Inc. v. Saunders*, 235 Va. 306, 367 S.E.2d 493, 495, 4 Va. Law Rep. 2484 (Va. 1988). A corollary rule forbids "claim-splitting," by which successive suits are brought on the same cause of action and "where each suit addresses only a part of the claim." *Bill Greever Corp. v. Tazewell Nat'l Bank*, 256 Va. 250, 504 S.E.2d 854, 856 (Va. 1998). This rule protects defendants from multiple lawsuits, ensuring that "'no one [is] twice vexed for one and the same cause.'" *Flora*, 367 S.E.2d at 495 (*quoting Jones v. Morris Plan Bank*, 168 Va. 284, 191 S.E. 608, 610 (Va. 1937)). The "principal test" used by Virginia courts to determine whether claims are a part of the same cause of action, and therefore would constitute "claim-splitting" if not tried together, is whether the same evidence will support both claims. *Id.* at 495-96 (internal citations omitted).

*Fennell v. Town of Pocahontas*, 2005 U.S. Dist. LEXIS 19007, *8 (W.D. Va. Sept. 2, 2005).

In *Fennell*, the plaintiff, a former employee of the Town, was injured in the line of duty as a police officer. While he was on leave, he was demoted. He attempted to grieve his demotion by making a verbal complaint to the Town Manager. He followed up with a written request for a reply. When none was forthcoming, he made a written request for a grievance hearing before the

personnel committee. When that did not result in a reply, he sent a letter to the mayor making the same requests. The personnel committee thereafter met with the plaintiff and terminated him without explanation. Following termination, plaintiff again attempted to use the grievance procedure, without success. He was eventually afforded a hearing before the Virginia Employment Commission ("VEC"). The VEC found that the reasons given for plaintiff's termination did not justify dismissal. During an appeal hearing, the Town offered different or additional reasons for plaintiff's termination, which plaintiff maintains were blatant, vicious and malicious lies. The VEC still found that plaintiff was entitled to unemployment benefits. After the above events, plaintiff sued the Town in state court seeking reinstatement, back pay and attorneys' fees. His case was dismissed for failing to exhaust administrative remedies. The federal suit followed. Within the federal suit, there were three (3) counts which related to the grievance procedure and alleged failures by the Town to comply with those procedures. The Town sought summary judgment on those claims, on the ground of res judicata, arguing that plaintiff *could have* brought those claims in state court, and his failure to do so barred him from now bringing the claims in state court. The federal court agreed:

> In the state court, the plaintiff asserted two claims under Virginia Code § 15.2-1507 as a result of the defendants' alleged failure to follow their grievance policy. 4 (Defs.' Mot. Summ. J. at Ex. 1.) The plaintiff would have supported these claims in state court with evidence relating to his efforts to use the grievance procedure and the Town's response. This is the same evidence he uses to support his current due process claims and a portion of his claim for punitive damages. It is true that the plaintiff's federal complaint has a more detailed description about these matters than did his state complaint, but the basic facts remain the same. Applying Virginia's claim-splitting rule as § 1738 requires, I conclude that the plaintiff had just one cause of action relating to the defendants' alleged violations of the grievance procedure, and could therefore maintain only one suit to remedy those violations.

*Id*. at 10.

Plaintiff urged the *Fennell* court not to apply a res judicata bar to his claims, arguing that

he did not have a full and fair opportunity to litigate them in the state court action. *Id.* at 11. The court rejected that argument, finding that "each of the facts pled in the federal complaint was available to the plaintiff at the time he filed his state action." *Id.* Accordingly, res judicata barred the claims which *he brought or could have brought* in the state court action. *See also, Riddick v. Justice*, 2021 U.S. Dist. LEXIS 221050, * 7 (E.D. Va. Nov. 16, 2021) (applying a res judicata bar to claims which were known at the time of an earlier court action and could have been brought in that action, noting "[b]y precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, 'res judicata . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.'") (citation omitted).

Here, it is beyond question that (a) there was a final judgment on the merits in the State Court Action; and (b) there is an identity of parties or their privies in this action and the State Court Action. Thus, the only issue which needs to be resolved to determine if res judicata bars this suit is whether the claims raised in this suit were or could have been raised in the State Court Action. Defendants submit that the claims raised in this suit are identical to those raised in the State Court Action (and, at the very least, are claims which could have been brought in the State Court Action). *See* Exhibit 3.

In the State Court Action, Smith complained that the School Board had illegally transferred her from Assistant Principal to a teaching position, in violation of Virginia Code section 22.1-294(C). Exhibit 3, pp. 1-2. She also complained that the School Board failed to follow the processes required for a meeting under Virginia Code section 22.1-294(D). *Id.*, p. 4-5. She further complained that the School Board failed to provide her documents in advance of the meeting which had been provided to School Board members. *Id.*, pp. 5-6. She complained that Chaudhry and

Sales were permitted to go into closed session with the School Board to presumably provide derogatory information about Smith. *Id.*, p. 5. She asked the state court to find: (a) that the School Board violated Virginia Code section 22.1-294(C) by failing to give timely notice of reassignment; and (b) violated her due process rights. *Id.*, p. 6. She implored the state court to find that her grievance was properly grievable or:

> B.     In the alternative, permit Ms. Smith to submit additional evidence to the Court so that it may substantively consider her Grievance and make a determination of its underlying merits, to include her request to be reinstated to the position of Assistant Principal for the 2023 – 2024 school year, and further, her request for an award of all backpay due to her, and also that she be paid at the appropriate compensation level for the remainder of the school year; and

> C.     Award Ms. Smith pre- and post-judgment interest for any backpay awarded to her, and also grant her any other relief which it deems to be fair and just.

*Id.*, p.7.

There can be no question but that what was requested and litigated in the State Court Action is the same as what Smith seeks herein. Insofar as the trial court declined to consider any claim asserted by Smith, her remedy was to note an objection, seek reconsideration or appeal. She did none of these things. Instead, she filed what can only be characterized as a "mirror" of her State Court Action in this court, hoping for a different outcome. But, the fact is she is precluded, by res judicata, from raising the claims herein that were or could have been raised in the State Court Action, which dealt with the exact same subject matter as is before this court. For this reason alone, this case should be dismissed in its entirety with prejudice.

**2.     Smith Has Not Established that She Had a Property Interest Protected by Due Process Guarantees Because She Does Not Have an Entitlement to Continued Employment as an Administrator.**

"Public employees have a constitutionally protected interest when State law guarantees that employment may not be terminated without cause or certain procedural safeguards." *Hibbitts*

*v. Buchanan County Sch. Bd.*, 2010 U.S. Dist. LEXIS 62422, *5 (W.D. Va. 2010). "A Virginia public school administrator has a protected property right in her employment once she obtains continuing contract status." *Id.* "Once an administrator obtains continuing contract status she may not be fired without cause. But, under State law, an administrator may be transferred to another school or demoted to a teaching position without cause." *Id.; see also Wooten v. Clifton Forge School Bd.*, 655 F.2d 552 (4th Cir. 1981) (holding administrator did not have a property interest in continuing employment as an administrator at the same rate of pay under Va. Code 22-217.2 (1976)).[3] Stated differently, "although Virginia state law provides certain procedural safeguards, the Fourteenth Amendment's due process right to property does not guarantee a right to a particular job, or the right to 'perform particular services.'" *Hibbitts v. Buchanan County Sch. Bd.*, No. 10-1814, 433 Fed. Appx. 203, 206 (4th Cir. 2011) (per curiam) (citation omitted).

Considering the above, it is readily apparent that the allegations in the Complaint fail to allege the deprivation of a property interest because a continuing contract does not create an entitlement to the assistant principal position or rate of pay. *Wooten*, 655 F.3d at 555 (noting "[w]e agree with the district court that 'continuing contract status' for principals, as statutorily defined, did not encompass a requirement that good cause be shown for reassignment" and concluding that the principal therefore had not shown a property interest upon which to premise a constitutional

---

[3] Virginia Code Section 22.1-294(C) defines "continuing contract status" and specifically states that it "shall not be construed" as prohibiting a school board from reassigning an assistant principal to a teaching position, or as entitling any assistant principal to the salary paid to her as an assistant principal in the case of reassignment. Further, Virginia Code Section 22.1-294(D) expressly provides that "[n]othing contained herein shall be taken to require cause, as defined in § 22.1-307, for the salary reduction and reassignment of a principal, assistant principal, or supervisor."

claim).[4] Therefore, Smith's due process claims arising under both the Fourteenth Amendment to the United States Constitution and the Due Process Clause of the Virginia Constitution fail because Smith has failed to demonstrate a property interest protected by due process guarantees. *McNally v. Va. DMV*, 80 Va. App. 483, 509 (2024) (noting the Virginia Supreme Court has held that procedural due process protections afforded under the Constitution of Virginia are coextensive with those of the federal constitution, and thus, the corresponding provisions of the Virginia Constitution go no further than their federal counterparts) (internal citations omitted).

### 3. The Alleged Failure to Comply with State Code Does Not Create a Due Process Violation.

The Due Process Clause of the Fourteenth Amendment requires that when terminated, "a public employee . . . [is] entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing." *Copenny v. City of Hopewell*, 7 F. Supp. 3d 635, 638 (E.D. Va. 2014) (citations omitted). "[A] tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudourmill*, 470 U.S. 523, 546 (1985). As discussed above, Smith was not terminated and does not have a property interest to support a due process claim based on reassignment to a teaching permission. However, assuming *arguendo* there is a property interest, the alleged violations of the State grievance procedure do not demonstrate she was denied the minimum guarantees of notice and an opportunity to be heard.

"[I]f a state grievance law grants more procedural rights than the Constitution requires,

---

[4] Although the relevant Virginia Code sections have been amended, the specific provision at issue, Va. Code § 22.1-294(C) is not meaningfully different than § 22-217.3 considered in *Wooten*. Notice must now be provided by June 15 instead of April 15 and the terms "administrative or supervisory personnel" are replaced with "principal, assistant principal, or supervisor." *See also* fn. 3.

failure to comply with state law does not create a federal due process violation." *Garraghty v. Virginia, Dep't of Corrections*, 52 F.3d 1274, 1285 (4th Cir. 1995) (*citing Riccio v. County of Fairfax*, 90 F.2d 1459, 1469 (4th Cir. 1990)). "[T]o hold that a state violates the Due Process Clause every time it violates a state-created rule regulating the deprivation of a property interest would contravene the well recognized need for flexibility in the application of the due process doctrine." *Riccio v. County of Fairfax*, 90 F.2d 1459, 1469 (4th Cir. 1990).

> Were we to adopt such a rule, we would become handcuffed, compelled to find constitutional violations where we, if not confronted by binding authority, otherwise would not, simply because a state has decided to enact, yet not in a trivial way to apply, a procedure. Although procedural due process doctrine does rely upon state law to a large extent by looking to state law for the origin of the protectable interests, the rule proposed by Riccio would effectively force us to defer to the states on the ultimate issue of whether there has been a violation of the Constitution. Such a result would be untenable and we therefore decline to so hold. . . . .
>
> Alleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures, even when those state-created procedures exceed the amount of process otherwise guaranteed by the Constitution. If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.

*Riccio* at 1469. Therefore, Smith's due process claims premised on the School Board's alleged failure to strictly comply with Virginia Code must be dismissed as the record shows Smith was afforded notice and an opportunity to be heard.

A. <u>Alleged Failure to Meet Statutory Deadline of June 15.</u>

Smith complains that the School Board failed to provide requisite notice of reassignment by June 15, 2023. In this case, any alleged failure to meet the statutory deadline does not amount to the deprivation of a Constitutional right. Smith had notice of the recommendation for reassignment no later than May 16, 2023. Exhibit 1. "In the context of a due process claim, the notice must be of such nature as reasonably to convey the required information . . . and it must

afford a reasonable time for those interested to make their appearance." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted). It is clear from the allegations in the Complaint that Smith understood the May 16, 2023 memorandum signed by Dr. Smith as a notice of reassignment because she "asked to appear before the School Board to try to persuade the Board not to approve and implement this recommendation." Compl. ¶ 14; Exhibit 2. Further, the allegations demonstrate she was afforded a reasonable time to make her appearance and object to the decision, as the meeting was conducted on June 27, 2023. Count I should be dismissed because the alleged failure to meet the statutory deadline of June 15, 2023 did not deprive Plaintiff of adequate notice of re-assignment or an opportunity to be heard and, therefore, did not deprive her of due process.

### B.  Alleged Failure to Follow Virginia Code Section 22.1-294(D).

Smith contends the School Board violated her constitutional right to due process by failing to have written policies in place regarding her meeting with the School Board and/or failing to follow the processes explained to her by Justin Martin ("Martin")[5] in advance of the meeting. In this regard, Martin advised:

> In the event the Board or staff intends to use any documentation regarding this matter, you will be given copies of such records prior to the meeting on June 27th.

Compl. ¶ 56. The Complaint alleges Smith asked who would be present for the meeting and was advised by Martin that LCPS had not made any final decisions but Superintendent Smith, Ms. Boland and Division Counsel Robert Falconi would likely be present. LCPS noted "[o]ther staff members may be present as well." Compl. ¶ 57.

Here again, Smith's claim must be dismissed because she has not alleged a deprivation of

---

[5] Smith does not assert that Martin was the School Board's designee for purposes of the meeting Smith requested with the School Board.

a property interest: her continued contract status does not prohibit reassignment to a teaching position without cause. Further, as explained in *Riccio*, the School Board's compliance with the requirements of 22.1-294(D), is irrelevant to this court's due process analysis, which is governed by federal standards. However, even if Smith has alleged a deprivation of a property interest and compliance with Virginia Code § 22.1-294(D) was relevant to the analysis, Smith's arguments are misplaced. Virginia Code § 22.1-294(D) does not require the School Board to have written policies or to even announce policies in advance of the meeting. Rather, Virginia Code §22.1-294(D) simply provides, in relevant part:

> The school board, division superintendent, or the division superintendent's designee shall determine what processes are to be followed at the meeting….

> The intent of this section is to provide an opportunity for a principal, assistant principal, or supervisor to discuss the reasons for such salary reduction and reassignment with the division superintendent, his designee, or the school board, and the provisions of this section are meant to be procedural only. Nothing contained herein shall be taken to require cause, as defined in § 22.1-307, for the salary reduction and reassignment of a principal, assistant principal, or supervisor.

Thus, the allegations in the Complaint fail to demonstrate non-compliance with § 22.1-294(D). For all of the above reasons, Smith's due process claim premised on the alleged failure to comply with Virginia Code § 22.1-294(D) must be dismissed.

### 4. The Allegations in the Complaint Demonstrate Smith was Provided a Constitutionally Adequate Opportunity to Be Heard.

Smith claims that the June 27, 2023 meeting violated her right to procedural due process because the "Board was given documents to consider which Plaintiff did not have and to which she was not privy," Compl. ¶ 59, and because certain individuals were allowed to attend closed session and Smith presumes those individuals provided adverse evidence that was considered by the Board. Compl. ¶ 60. Assuming *arguendo* that Smith has alleged facts to support the deprivation of a constitutionally protected property interest, which she has not, the allegations in the Complaint

19

fail to demonstrate constitutionally inadequate process.

A. Alleged Failure to Provide Smith Documents.

Smith vaguely alleges that "during the meeting, one School Board member was placed on actual notice by Plaintiff that the Board was given documents to consider which Plaintiff did not have and to which she was not privy." Compl. ¶ 59. Smith does not allege what the document(s) is/are, whether the information provided was new, or whether the Board used or relied upon the document(s) in reaching its decision. "Ex parte communications are generally only due process violations when the information contained in them is both new and material." *Mills v. Steger*, 64 Fed. Appx. 864, 870 (4th Cir. 2003) (holding ex parte communications were not a due process violation because the information was not new).

The requirements of due process are "flexible" and are based on what "the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In considering the scope of process required, courts must consider "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of any additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mallette v. Arlington Co. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 640 (4th Cir. 1996).

Here, Defendants maintain that Smith does not possesses a constitutionally protected property interest due to the statutory definition of "continuing contract status" expressly allowing an assistant principal to be reassigned to a teaching position with the associated pay reduction without cause. Even if there is a property interest, it is certainly less significant than termination, since the salary reduction and reassignment can occur without cause. Therefore, the process Smith

was afforded in this case – an opportunity to state her case to the School Board at a meeting – was appropriate and did not violate Smith's rights in any way.

      B.   <u>Unsupported claim that Chaudhry and Gonzalez-Sales provided adverse information to the Board in closed session.</u>

Smith claims Chaudhry and Sales were permitted to enter the Board's closed session, and she **presumes**, without any factual allegations to support the inference, that they provided information adverse to her that the School Board considered. Smith admits she did not attend this particular closed session and there are no allegations to demonstrate how she can in good faith allege (i) that Chaudhry or Sales provided information to the Board in closed session or (ii) that the Board relied on any information provided by Chaudhry or Sales in closed session. Although a plaintiff is generally permitted to plead facts "upon information and belief" if the plaintiff "is in a position of uncertainty because the necessary evidence is controlled by the defendant," the allegation must be supported by "secondhand information" that provides the plaintiff a "good faith reason" for believing it to be true. *Drzymala v. BAE Sys. Controls, Inc.*, 7:21-cv-00522, 2022 U.S. Dist. LEXIS 157253 at *5 (W.D. Va. Aug. 31, 2022). If the presumed allegations are not grounded in specific facts they "veer away from supporting plausible inferences." *Id.* (citing *Virginia Transformer Cor. v. Evvert*, 7:18-cv-00143, 2019 U.S. Dist. LEXIS 52441 (W.D. Va. Mar. 28, 2018).

In this case, Smith knows Chaudhry and Sales attended closed session and knows the School Board went forward with the re-assignment. That is all. There are no factual allegations to support the plausible inference that Chaudhry or Sales provided any information in closed session or to suggest the Board based its decision on any information provided by Chaudhry or Sales. Therefore, these unsupported allegations should be rejected by the court on a motion to dismiss.

In summary, Smith has not stated a due process violation, under federal or state law,

because she had no property interest protected by due process guarantees. Even if the court were to find otherwise, Smith was afforded all the due process required by law. Thus, Counts I, II and III should be dismissed with prejudice.

### 5. No Due Process Claim Has Been Stated Against Dr. Smith

Dr. Smith has been sued in his individual capacity for alleged violations of due process, both under federal and state law. Lawsuits against officials in their individual capacity cannot succeed absent proof of some degree of personal involvement in the alleged deprivation of rights. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). "[L]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Id.*

Here, the allegations in the Complaint fail to demonstrate that Dr. Smith's personal conduct resulted in a due process deprivation. As superintendent, he is not authorized to reassign an assistant principal or reduce her salary. The School Board is the entity authorized to take these actions and to provide any requisite due process.[6] As the allegations fail to demonstrate Dr. Smith's conduct caused a constitutional deprivation, Dr. Smith should be dismissed with prejudice from this lawsuit.

### 6. Smith Has Not Stated a Claim for Breach of Contract Against LCPS (Count IV).

LCPS Policy 7650 provides, in relevant part:

> The **School Board** shall enter into written contracts with professional staff, (teachers, assistant principals, principals, and supervisors) before such employees assume their duties. Contracts will be in the form permitted by the State Board of Education, with special covenants added by the local School Board as appropriate. Contracts **shall be signed in duplicate, with a copy furnished to each party**.

(emphasis added).

---

[6] *See*, Virginia Code § 22.1-294(D), which provides: "[t]he decision to reassign and reduce salary shall be at the sole discretion of the school board."

This Policy is consistent with Virginia law, which provides that:

The school board shall retain its exclusive final authority over matters concerning employment and supervision of its personnel, including dismissals and suspensions.

Virginia Code § 22.1313(A).

In *Socol v. Albemarle Cty. Sch. Bd.*, 399 F. Supp. 3d 523 (W.D. Va. 2019), a school board employee sued the Albemarle County School Board when his contract of employment was not continued. He asserted a number of federal and state law claims. In evaluating claims brought under § 1983, the court examined whether Socol had a valid property interest. His claim was that the Division Superintendent had reached an oral agreement for employment. In rejecting that argument, the court stated:

The plaintiffs [sic] reliance on the alleged oral agreement in March of 2018, when Haas was Deputy Superintendent; suffers from two fatal flaws. First, Socol does not cite, and the court has not located, any authority indicating that an assistant or deputy superintendent has the power to bind a public school board to an employment contract. To the contrary, "Virginia authorities suggest that a superintendent is not an agent for a member of the school board, [and cannot] enter into or terminate contracts in areas normally reserved to the school board." Dennis v. Cty. Sch. Bd., 582 F. Supp. 536, 542 (W.D. Va. 1984) (emphasis added) (citing Legg v. Cty. Sch. Bd., 157 Va. 295, 160 S.E. 60 (1931)). Such areas plainly include employment contracts. See Va. Code § 22.1-313 ("The school board shall retain its exclusive final authority over matters concerning employment and supervision of its personnel."); *Id*. § 22.1-293 ("A school board, upon recommendation of the division superintendent, may employ principals and assistant principals."); *Id*. § 22.1-302 ("A written contract ... shall be made by the school board with each teacher employed by it ...."); 8 Va. Admin. Code § 20-490-20 ("Contracts with teachers shall be executed on behalf of the [school] board by the chairman and the clerk.").

Here, the "contract" which Smith contends that she entered with the School Board is a "Continuing Contract Salary Notification, 2023-2024." Compl., ¶ 12; Exhibit 5. The **notification** came from the Department of Human Resources and Talent Development. Exhibit 5. There is no indication, on the document, that the School Board authorized or ratified the "contract," knew of

the "contract" or entered into the "contract." And, the document is certainly not signed in duplicate, as required by Policy 7650, to be effective. If, as in *Socol*, an alleged promise of employment by the Division Superintendent was ineffective to bind the School Board, certainly a notification, pushed out by a school board employee with a lower rank than Superintendent, which is not in any way signed, acknowledged or approved by the School Board is not a valid and enforceable contract in the first instance.

In further support of their motion to dismiss the breach of contract claim, Defendants submit that a school board cannot be held liable for an action of one of its agents or employees, "unless such action has been previously authorized, or is subsequently ratified." *County Sch. Bd. v. First Nat. Bank*, 161 Va. 127, 135, 170 S.E. 625 (1933). See generally 56 Am. Jur. 2d, Municipal Corporations, § 496. There are no allegations in the Complaint that any lawful action was ever officially taken by LCPS to place Smith in the position of Assistant Principal for the 2023-2024 school year, or to authorize anyone else to so place her. Without the School Board authorizing or ratifying any offer of employment to Smith, it is of no effect.

Further, the basic elements of a contract are an offer, acceptance, and consideration. *Sfreddo v. Sfreddo*, 59 Va. App. 471, 488 (2012). All contracts also require a meeting of the minds of the parties involved. *Lacey v. Cardwell*, 216 Va. 212, 223 (1975); *Green's Ex'rs v. Smith*, 146 Va. 442, 452 (1926). "Until parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract." *Persinger & Co. v. Larrowe*, 252 Va. 404, 408 (1996). Further, an offer may be withdrawn at any time before acceptance. *Crews v. Sullivan*, 133 Va. 478, 483 (1922).

Here, by Smith's own pleading, it is apparent that the "Continuing Contract Salary Notification, 2023-2024" was pushed out to her on May 11, 2023. Before she accepted the "offer"

which she contends was made to her, Smith was advised that the offer was no longer on the table; that is, she was advised that she was being recommended for transfer to a teaching position for the next school year. She was further advised of her right to meet with the School Board to persuade it not to follow through with that recommendation. It was only after these events on May 16, 2023, that Smith decided to sign the "contract" which had been pushed out to her on May 11, 2023. By the time she did this, it is clear that there was a withdrawal of any prior offer, if it was even valid in the first instance. Or, at the very least, there was no meeting of the minds as to what position, if any, Smith would be placed in for the 2023-2024 school year, resulting in a lack of mutual assent and, therefore, no "contract."

## V.     CONCLUSION

WHEREFORE, considering the above, Defendants, Loudoun County School Board and Daniel Smith, Ed.D., by counsel, respectfully submit that Smith has failed to state a viable claim against them, and this court should, therefore, grant Defendants' Motion to Dismiss and dismiss all claims with prejudice.

**LOUDOUN COUNTY SCHOOL BOARD and
DANIEL SMITH, Ed.D**

McGAVIN, BOYCE, BARDOT,
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone:     (703) 385-1000
Facsimile:     (703) 385-1555
hbardot@mbbhjlaw.com
_____/s/_____
Heather K. Bardot, Esquire
VSB No. 37269
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of May, 2024, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John B. Flood
BERLIKLAW, LLC
1818 Library Street, Suite 500
Reston, Virginia 20190
JFlood@berliklaw.com
Counsel for Plaintiff

McGAVIN, BOYCE, BARDOT,
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone:    (703) 385-1000
Facsimile:    (703) 385-1555
hbardot@mbbhjlaw.com
_____/s/_____
Heather K. Bardot, Esquire
VSB No. 37269
Counsel for Defendants